NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | **Hon. Dennis M. Cavanaugh** |
| G-I Holdings, INC., et al., (f/k/a GAF Corporation) | **OPINION** |
| | Bankruptcy Case No. 01-30135 (RG) and No. 01-38790 (RG) |
| Debtor. | Civil Action No. 2:12-6933 |
| UNITED STATES GYPUM COMPANY, PFIZER, INC. and QUIGLEY COMPANY, INC. | |
| Appellant, | |
| v. | |
| G-I Holdings, INC., | |
| Appellee. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon appeal by United States Gypsum Company, Pfizer, Inc. and Quigley Company Inc. (hereinafter "Appellants" or the "Former Members[1]") of the Bankruptcy Court's August 13, 2012 Opinion ("the Opinion") finding in favor of Appellee G-I Holdings (hereinafter "Appellee" or "G-I") on its motion for Summary Judgment. Pursuant

---

[1] The Bankruptcy Court referred to U.S. Gypsum, Pfizer and Quigley as the "Former Members" of the Center for Claims Resolution, thus for consistency's sake this Court will do the same.

1

to FED. R. CIV. P 78, no oral argument was heard. Based on the following and for the reasons expressed herein, Appellants appeal is **denied** and the Bankruptcy Court's Opinion is **affirmed.**

I.  **BACKGROUND**[2]

Appellants, Appellee G-I and other companies were parties to asbestos personal injury lawsuits. In an effort to resolve these lawsuits efficiently, the companies entered into a contract where they agreed to allocate the costs of settling the thousands of asbestos personal injury claims against them in an agreed upon formula. Under the contract, the parties agreed to create a claims handling organization, the Center for Claims Resolution ("CCR"), that would manage the claims and send out bills to the contracting parties for their share of settlement payments owed under the contractually-agreed formula.

G-I subsequently filed for bankruptcy on January 5, 2001. During the course of G-I's bankruptcy proceeding, a payment dispute arose between the CCR and G-I, which was settled. The Former Members of the CCR objected to this settlement; because the Former Members paid an allocated share of G-I's contractual liability under the Producer Agreement, they filed a claim against G-I for the amounts in paid on G-I's behalf for moneys they believe were owed to them, not the CCR. After initially objecting to the claims of the Former Members in the Bankruptcy Court, G-I filed a motion for summary judgment in support of its objection. On August 13, 2012, the Bankruptcy Court issued its Opinion granting the motion for summary judgment in favor of G-I. The Bankruptcy Court made the following determinations:

1. The Former Members did not have claims against G-I because they had waived, under the Producer Agreement, claims against other CCR members for contribution and indemnity with respect to "asbestos-related claims" (Opinion 36);

---

[2] This Court need not recite the entire procedural and factual history of this case, as the Hon. Rosemary Gambardella of the Bankruptcy Court did an efficient and clear job in the opinion below. For a more complete background, see In Re: G-I Holdings, Inc. et al, Bankruptcy Court No. 01-30135 (RG) and 01-38790 (RG) (ECF No. 1-1).

2

2. The claims of the Former Members, under Delaware law, are "derivative" of claims of the CCR, rather than "direct" claims (Opinion 50-51; and
3. Allowing the Former Members to recover on claims against G-I would constitute an "impermissible double recovery" against G-I, since CR had already resolved its claims against G-I pursuant to the CCR settlement (Opinion 52).

Appellant U.S. Gypsum filed a Notice of Appeal on October 26, 2012 (ECF No. 1) and a supporting brief on November 26, 2012. (Appellant's Br., ECF No. 5). Appellants Pfizer and Quigley adopted the arguments and briefs of U.S. Gypsum, for both the moving brief and the reply brief. (Docket No. 12-cv-6935, November 26, 2012, ECF No. 6). Appellee G-I Holdings filed a Response Brief on December 10, 2012. (Appellee's Br., ECF No. 8). Appellants filed a Reply Brief on December 21, 2012. (Appellant's Reply, ECF No. 14).

## II. STANDARD OF REVIEW

This Court has jurisdiction over final judgments and orders of the Bankruptcy Court pursuant to 28 U.S.C. § 158. A district court applies a "clearly erroneous" standard to the bankruptcy judge's findings of fact and reviews the bankruptcy judge's legal conclusions *de novo*. See FED. R. BANKR. P. 8013; In re Cohn, 54 F.3d 1108, 1113 (3d Cir. 1995). A factual finding is clearly erroneous if, in reviewing all the evidence, the reviewing court is left with the "definite and firm conviction that a mistake has been committed," even if there is evidence to support the finding. In re Allegheny Int'l, Inc., 333 U.S. 869, 173 (3d. Cir. 1992); (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). A district court reviews the bankruptcy court's "exercise of discretion for abuse thereof." Manus Corp. v. NRG Energy, Inc., (In re O'Brien Envtl. Energy, Inc.), 188 F.3d 116, 122 (3d. Cir. 1999). "A bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts." Id.

3

## III. DISCUSSION

The sole issue on appeal is whether the Former Members of the CCR can assert a breach of contract claim against G-I. As a threshold matter, the Bankruptcy Court found that:

> the Producer Agreement signatories intended to establish a cooperative, collective process for allocating asbestos liability, and in furtherance of that process, delegated to the new corporate entity the exclusive right to seek collection from a member that did not make a payment required under the Producer Agreement's allocation of a pro rata share of liability and expenses.

(Opinion 33). This Court agrees; furthermore, when interpreting contracts, priority must be given to the intention at the time the contract is formed. See E.I. du Pont de Nemours & Co. v. Shell Oil Co., 498 A. 2d 1108, 1114 (Del. 1985); see also GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P., 36 A.3d 776, 779 (Del. 2012) (giving priority to parties' intentions as reflected in the four corners of the contract); Lorillard Tobacco Co. v. Am. Legacy Found., 903 A.2d 728, 738 (Del. 2006) (finding that courts are to "effectuate the parties' intent"); Hfn, Inc. v. Intel Corp., 2007 WL 2801393, at *9 (Del. Ch. May 2, 2007) (quoting Eagle Indus., Inc. v. DeVilbiss Health Care, Inc., 702 A.2d 1228, 1232 (Del. 1997)); Comrie v. Enterasys Networks, Inc., 837 A.2d 1 (Del. Ch. 2003) (holding that attempting, within reason, to fulfill the reasonable shared expectations of parties at the time they contracted is the primary goal of contract interpretation). Courts should also give effect to all contract provisions. In E.I. du Pont de Nemours & Co. v. Shell Oil Co., the Delaware Supreme Court held that:

> [i]n upholding the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein. . . . Moreover, the meaning which arises from a particular portion of an agreement cannot control the meaning of the entire agreement where such inference runs counter to the agreement's overall scheme or plan . . . . To do so would be to violate the cardinal rule of contract construction that, where possible, a court should give effect to all contract provisions.

4

498 A.2d at 1113-14 (internal citations omitted). The Bankruptcy Court stated that "[t]he meaning from one provision of a contract cannot control if that provision's meaning would contradict the meaning of the entire contract. Courts should give effect to all contract provisions." (Opinion 32). While Appellants argue that the Bankruptcy Court erred in finding that they could not assert a claim for breach of contract, this Court agrees with the Bankruptcy Court and finds that the Producer Agreement delegated the right to enforce the claims in question to the CCR. As Appellees state, "the clear purpose of the Producer Agreement was to eliminate costly and time-consuming litigation among its members and. . . to allow Participating Producers to resolve asbestos-related claims expeditiously and efficiently." (Appellee's Br. 16). Each provision of the contract should be read through this lens. The Bankruptcy Court undertook a thorough examination of the contractual provisions of the Producer Agreement, and found that in order to effectuate the parties' intent, Participating Producers, through the Producer Agreement "(i) elected to rely exclusively on the CCR to settle and pay asbestos claims and to collect payments from members, and (ii) agreed that upon termination of CCR membership, former members would continue to be bound by obligations incurred during the period it was a member." (Opinion 37).

Although the Court agrees with the reasoning of the Bankruptcy Court and affirms the holding that the Appellants were contractually barred from pursuing a breach of contract claim against Appellee independent of the CCR, the Court will address Appellant's two main arguments.[3]

First, Appellants argue that the Bankruptcy Court ignored the plain language of Section X of the Producer Agreement, which they argue specifically provides that the Former Members

---

[3] Appellants also make arguments regarding the Bankruptcy Court's discussion of direct versus derivative claims and the problem of "double recovery." Because this Court agrees with the Bankruptcy Court that the contract language bars Appellants claim, this Court does not find it necessary to address these issues.

5

have a right to bring a breach of contract claim. Section X is called "Third Party Rights" and provides:

> The Agreement is intended to confer rights and benefits only upon Participating Producers, Supporting Insurers that are paying unallocated expenses incurred by the Center and the Center, and is not intended to confer any rights or benefits upon any other persons. No person other than the Center, a signatory hereto or a Supporting Insurer that is paying unallocated expenses incurred by the Center shall have any legally enforceable rights under the Agreement. All rights of action for any breach of this Agreement by any signatory hereto are hereby reserved to the Center, Participating Producers and to Supporting Insurers that are paying unallocated expenses incurred by the Center.

Appellants argue "if the parties to the Producer Agreement intended the Bankruptcy Court's incorrect interpretation of Section X, the provision would not have explicitly stated that the member companies have the right to bring breach of contract claims against each other." (Appellant's Br. 16-17). However, the Bankruptcy Court held that "when read in its entirety, § X clearly and unambiguously limits the rights of third parties and avoids the creation of unintended third party beneficiaries." (Opinion 36-37). This Court agrees. Section X is titled "Third Party Rights" and the language is meant to limit just that. Read in a vacuum, the final sentence does reserve a cause of action for the Center in addition to the Participating Producers, but this reading cannot hold water when read in concert with the other provisions and when taken in the context of the section's title. Appellees argue:

> Where, as here, the Producer Agreement has created a payment obligation to the CCR and a mechanism by which the CCR – and only the CCR – may enforce that obligation, nothing in the non-specific language of the last sentence of Section X somehow empowers a Participating Producer to bring its own suit to enforce the same obligation.

(Appellee's Br. 25). This Court agrees.

Appellants next argue that the Bankruptcy Court "erred in finding that a permissible, but not mandatory, arbitration provision in the Producer Agreement barred members from suing each

6

other for breach of contract." (Appellant's Br. 18). Again, this Court disagrees with Appellants argument. In keeping with the purpose of the Producer Agreement, the Former Members delegated to the CCR enforcement of the share payment provisions, and Section XIV ¶ 4 gives the CCR the power of enforcement to the Center and the Center's Board of Directors *on behalf* of the Center's Participating Producers. While Appellants argue that this provision is permissible, there is no other provision in the Producer Agreement that establishes any remedy for breach of a payment obligation, and this section clearly provides an express remedy. Indeed the CCR has already exercised that remedy on behalf of the Former Members. Again reading the contract as a whole, this Court is not convinced that this provision is merely permitting arbitration for a breach of a payment obligation while leaving open the option for independent members to bypass the sole authority of the CCR to remedy it on their own.

## IV. CONCLUSION

For the foregoing reasons, Appellants appeal is **denied** and the Bankruptcy Court's Opinion is **affirmed**. An appropriate Order follows this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date: June 26, 2013
Original: Clerk's Office
cc: Hon. Joseph A. Dickson, U.S.M.J.
All Counsel of Record
File